**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRISTA L.,**

　　　　　　　　**Plaintiff,**

　　v.　　　　　　　　　　　　　　　　**Civil Action 2:25-cv-01184**
　　　　　　　　　　　　　　　　　　　**Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

　　　　　　　　**Defendant.**

## OPINION AND ORDER

Plaintiff, Trista L., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

### I.　　BACKGROUND

Plaintiff filed her applications for DIB and SSI on December 5, 2023, alleging disability beginning June 2, 2023, due to rheumatoid arthritis, fibromyalgia, L5-F1 disc ruptures, degenerative disc disease in lower back, cartilage of left hip torn, torn ligaments, pinched nerve and bruised bone in knee, inability to walk or stand long periods, chronic fatigue and insomnia, and memory loss and concentration issues. (R. at 230–38, 300). After her applications were denied initially and on reconsideration, Administrative Law Judge Matthew Winfrey (the "ALJ") held a telephone hearing on January 28, 2025. (R. at 55–80). The ALJ denied benefits in a written decision on February 20, 2025. (R. at 31–54). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 10, 2025 (Doc. 1), and the Commissioner filed the administrative record on December 5, 2025. (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 9, 11).

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2027. (R. at 36). The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 2, 2023, her alleged onset date of disability. (*Id.*). The ALJ determined that Plaintiff suffered from the severe impairments of rheumatoid arthritis; headaches; sciatica; failed lumbar back syndrome; status post lumbar discectomy; right foot joint degeneration; left knee arthralgia; and left hip bursitis. (R. at 37). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 39).

The ALJ summarized Plaintiff's statements to the agency and the testimony from the administrative hearing, as well as Plaintiff's medical records. (R. at 39–44). As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl; no balancing as defined by the Selected Characteristics of Occupations; no climbing of ladders, ropes, scaffolds; no exposure to hazards as defined in the Dictionary of Occupational Titles; and will be off task 5% of the time during the workday due to pain and other symptoms.

(R. at 41).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 42).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff is unable to perform her past relevant work as an auto parts counter clerk and assistant manager for

2

auto parts store.  (R. at 46).  Further relying on the VE testimony, the ALJ determined that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a parts inspector or charge account clerk.  (R. at 46–47).  Consequently, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act, since June 2, 2023.  (R. at 47).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court."  *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III.    DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ did not sufficiently explain why he included a limitation of 5% time off task in Plaintiff's RFC.  (Doc. 9 at 6–10).  Plaintiff also claims that the ALJ failed to follow the requirements of SSR 24-3p when soliciting the VE's testimony about job numbers and, as a result, did not carry the Commissioner's burden at step five. (*Id.* at 10–13).  The Court disagrees on both counts.

### A.    The ALJ's 5% Off Task Time RFC Finding

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1).  "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe*, 342 F. App'x at 157; *see* 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC].'").  When determining the RFC, the ALJ must evaluate several types of evidence, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing Webb, 368 F.3d at 633).  In doing so, the ALJ must resolve conflicts in the record.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (citation omitted).

In formulating the RFC, an ALJ is not required to adopt a medical opinion verbatim. *See, e.g., Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a

physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim."), *report and recommendation adopted*, No. 2:18-CV-67, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019).  Even more, an ALJ's RFC finding need not "correspond to a particular physician's opinion" as long as the ALJ makes "a connection between the evidence relied upon and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *see also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, at 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." (collecting cases)).  "Ultimately, 'the ALJ must build an accurate and logical bridge between the evidence and his conclusion.'" *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019) (citation omitted), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

As noted above, the ALJ included in Plaintiff's RFC a limitation that she would be off task for 5% of the workday due to pain and other symptoms.  (R. at 41).  Plaintiff argues that the ALJ failed to build a logical bridge between the evidence and this conclusion.  (Doc. 9 at 6–10).  Plaintiff suggests that 5% is arbitrary, and the ALJ did not sufficiently explain why he included it in the RFC, especially because there were no medical opinions that endorsed the restriction.  (*Id.*).  The Court does not agree.

In considering the record, the ALJ closely attended to testimony and evidence of Plaintiff's pain and other symptoms.  He considered Plaintiff's testimony that she experienced foot, back, and knee pain that impacted her life in various ways.  (R. at 42 (citing R. at 60, 62–66 (Plaintiff's

testimony that she has difficulty sitting, standing, going up and down stairs, lifting, and walking distance))).  The ALJ found the record showed her rheumatoid arthritis caused complaints of pain "all over" and in "all joints," as well as stiffness, fatigue, and tenderness at times.  (R. at 42–43 (citing R. at 440, 455, 474, 481, 608, 617, 802, 843)).  The ALJ noted that Plaintiff experienced persistent back, hip, leg, foot, and ankle pain, and several exams showed tenderness and weakness in these areas.  (R. at 43–44 (citing, *e.g.*, R. at 400, 410, 420, 441, 446, 469, 494, 505, 661, 668, 712)).  A lumbar spine x-ray showed degenerative disk disease, an MRI showed posterior fusion and facet arthropathy, and Plaintiff received several back surgeries to help with pain.  (R. at 43 (citing, *e.g.*, R. at 443, 466, 437, 484, 499)).  The ALJ noted Plaintiff took mediation and received steroid injections for her pain symptoms.  (*Id.* (citing, *e.g.*, R. at 395, 440, 484, 498, 820)).

The ALJ found that considering Plaintiff's impairments, the record supported that Plaintiff would need to be off task 5% of the workday to deal with her pain and other symptoms.  (R. at 44).  The ALJ later expounded on this finding in discussing the state agency reviewers' opinions.  (*Id.*).  The ALJ noted the state agency reviewers found Plaintiff was limited to a light exertional level with other restrictions related to climbing, balancing, stooping, kneeling, crouching, and crawling.  (*Id.* (citing R. at 91–92, 99–100, 109, 119–120)).  However, the ALJ concluded these opinions were not persuasive because evidence revealed Plaintiff is more limited than the doctors found.  (*Id.*).  The ALJ stated "persistent and severe pain in her joints related to her rheumatoid arthritis and pain in her back and extremities supports more severe limitations to sedentary exertion, climbing, balancing, and additional limitations to being off task 5% of the workday and exposure to hazards."  (R. at 44).  The ALJ also cited the state agency reviewer's inadequate consideration of Plaintiff's subjective complaints and the combined effect of Plaintiff's impairments in making this finding.  (R. at 44–45).

6

Contrary to Plaintiff's assertion, the ALJ adequately explained his inclusion of a 5% off task allowance in Plaintiff's RFC.  He first carefully catalogued the record evidence.  The ALJ then noted Plaintiff's "persistent and severe pain in her joints related to her rheumatoid arthritis and pain in her back and extremities," and found she would be off-task 5% of the workday to deal with that pain and other symptoms.  (R. at 44).  The ALJ did not need to provide a more fulsome discussion.  *Cf. Tammy W. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-1196, 2024 WL 4284251, at \*6 (S.D. Ohio Sept. 25, 2024) ("The fact that the ALJ did not specifically explain why she chose five minutes off-task for every hour as the duration of her off-task limitation does not outweigh the fact that she explained and supported the inclusion of it within Plaintiff's mental RFC."); *Burton v. Comm'r of the Soc. Sec. Admin.*, No. 3:19-CV-00313, 2021 WL 388768, at \*4 (S.D. Ohio Feb. 4, 2021) ("[A]lthough the ALJ did not specifically justify [a 5–8%] time-off-task range, she did engage in a meaningful assessment of Plaintiff's impairments that may affect her ability to remain on task."), *report and recommendation adopted*, No. 3:19-CV-313, 2021 WL 2186451 (S.D. Ohio May 28, 2021).  The Court can adequately trace the ALJ's reasoning in formulating the RFC restriction.

This is not a situation where an ALJ found a medical opinion supported but did not explain how the opinion's limitations translated into a different RFC finding.  *Cf. Farley v. Comm'r of Soc. Sec.*, No. 2:18-CV-1104, 2020 WL 772330, at \*6 (S.D. Ohio Feb. 18, 2020) (remanding where a supported opinion found Plaintiff would need fifteen minute unscheduled breaks every half hour but the ALJ's RFC included only an allowance for being off-task 8% of the work day), *report and recommendation adopted*, No. 2:18-CV-1104, 2020 WL 1042383 (S.D. Ohio Mar. 4, 2020).  Rather, the ALJ formulated the RFC based on the record evidence.  And it makes no difference that the ALJ did not rely on a medical opinion.  He did not need to if he provided "a connection

between the evidence relied upon and the conclusion reached." *Tucker*, 775 F. App'x 220 at 226. As discussed above, the ALJ made that connection, and his conclusion is supported by substantial evidence.

Even more, in general the Court "will not fault the ALJ for finding more restrictions than the state agency reviewers opined." *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *7 (N.D. Ohio June 16, 2022); *see also Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing."), *report and recommendation adopted*, No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016).  And at base, Plaintiff has not demonstrated that she needs a greater off-task limitation.  (*See generally* Doc. 9); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations . . . .").

In sum, the ALJ successfully built a logical bridge between the evidence and the RFC finding.  Plaintiff's error is without merit.

**B.     SSR 24-3p**

Plaintiff's second assigned error concerns a relatively new Social Security Ruling: SSR 24-3p: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determination, which rescinded and replaced SSR 00-4p.  *See* S.S.R. 24-3p, 2024 WL 5256890 (Dec. 6, 2024).

At step five of an ALJ's sequential analysis, the ALJ determines whether Plaintiff, based on her residual functional capacity and vocational factors (such as age, education, and work experience), can "make an adjustment to other work."  20 C.F.R. § 404.1520(g)(1).  Unlike the

prior steps, the Commissioner bears the burden of proof and "must identify a significant number of jobs in the economy that accommodate [Plaintiff]'s residual functional capacity and vocational profile." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 469 (6th Cir. 2017) (quotation marks and citations omitted).  "[T]he testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with [Plaintiff]'s limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004).

In garnering this testimony for step five under the older Ruling, ALJs had an imperative to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [at a claimant's disability hearing] . . . and information in the Dictionary of Occupational Titles (DOT)." *See* S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  In rescinding SSR 00-04p, the Social Security Administration ("SSA") made clear it "will no longer require [its] adjudicators to identify and resolve conflicts between occupational information provided by . . . VEs and information in the DOT." S.S.R. 24-3p, 2024 WL 5256890, at *2.  The SSA explains,

> [O]ur adjudicative experience since we issued SSR 00-04p has shown that requiring our adjudicators . . . and VEs to identify and explain conflicts with the DOT is time consuming. At the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage . . . VEs from using occupational data in sources other than the DOT.

*Id.*  Instead, "when the claimant is represented, [SSA] expect[s] the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.*

Additionally, now VEs "may use any reliable source of occupational information that is commonly used by vocational professionals . . . along with their professional knowledge, training, and experience.  VEs . . . may use a combination of these sources when providing occupational

evidence." *Id.* at *3. The Ruling provides that as part of their testimony, VEs may offer "estimates of the number of jobs that exist in the national economy in such occupations." *Id.* at *4. But the SSA does "not dictate any specific approach to estimating job numbers, and the numbers provided are only general estimates." *Id.* Still, the SSA "expects . . . VEs to identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers." *Id.* At the same time, the Ruling notes that "because VEs . . . are impartial and qualified professionals whom we consult because of their expertise, a more detailed inquiry into the sources of data or approaches used is not usually required." *Id.*

The Ruling goes on to say that VEs may "cite to multiple acceptable sources of occupational data that do not precisely correspond to each other." *Id.* at *5. One example is the Standard Occupational Classification (SOC) system aggregates some occupational data at a higher level than the DOT because certain single job codes in the SOC correspond to a large number of DOT codes. *Id.* The Ruling provides that when a VE cites occupations from DOT but derives job number estimates from a SOC-based classification system, the VE "would need to explain the general approach of how they compared the [data]." *Id.* While a "detailed inquiry is not required," if a VE "does not provide any explanation about the general approach" the ALJ "should ask them to provide one." *Id. See also id.* at *6 ("If the . . . VE does not provide the expected information and explanation outlined above, the adjudicator will usually need to develop the record with sufficient evidence to make a supported finding at step four or step five of the sequential evaluation process.").

Against this backdrop, Plaintiff argues that the ALJ failed to satisfy the requirements of SSR 24-3p because he did not obtain an explanation of the VE's general approach to estimating job numbers. (Doc. 9 at 10–13). At the disability hearing, the ALJ posed a hypothetical to the VE

10

that required the VE to consider whether a theoretical individual with Plaintiff's age, education, and RFC could perform jobs in the national economy. (R. at 74–77). The VE identified three jobs: DOT code 669.697-014, parts inspector; DOT code 209.587-010, addressing clerk; and DOT code 205.367-014, charge account clerk. (R. at 76). The VE testified that in the national economy, there are approximately 15,000 parts inspector jobs, 27,000 addressing clerk jobs, and 35,000 charge account clerk jobs. (*Id.*). Then, the ALJ and the VE had the following exchange:

ALJ: And has your testimony today been consistent with the Dictionary of Occupational Titles?

VE: Yes. It has been, Your Honor, except those areas that are not addressed in those publications, such as time off task and absenteeism. My response is based upon my professional training

ALJ: And could you identify the data sources that you relied upon in providing the jobs?

VE: Yes, Your Honor. Data sources are from the Occupational Employment Quarterly, which uses the broad data provided by the U.S. Department of Labor, the Bureau of Labor Statistics, and the U.S. Department of Commerce, that's the Census Bureau.

ALJ: Could you provide a general discussion of how you estimate your job numbers?

VE: Yes. There is no publication that's available to my knowledge that identifies specific jobs within a specific DOT code. So the – and therefore, an educated estimate is the only alternative for me to be able to identify the job numbers that would match up with the ones that I identify per DOT code.

ALJ: And could you identify whether there are any differences in the classification systems of the data sources that you use, and if so, how [you] account for those differences when you provide your job estimates?

VE: Yes, Your Honor. The definitions of strength and skill levels are the same for the Occupational Employment Quarterly, as the Social Security Administration. So, there is no conflict arising in my – in that area.

11

(R. at 78–79).  When the ALJ asked Plaintiff's counsel if she had any questions for the vocational expert, counsel replied, 'I do not have any questions." (R. at 79).  Relying on the VE's testimony, the ALJ ultimately found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 47).

This record shows the ALJ complied with his SSR 24-3p obligations to solicit an explanation as to a VE's general approach to estimating job numbers.  The ALJ asked the VE to identify the sources of data he relied on in providing the jobs; to provide a general discussion of how he estimated the jobs; to identify the differences in classification systems from the data sources; and to testify how he accounted for any of those differences in providing the job estimates. (R. at 78–79).

Still, Plaintiff submits the ALJ has an obligation to go further.  (Doc. 9 at 12–13).  From Plaintiff's perspective, the VE's response to the ALJ's question about how he estimated the job numbers—that he used an educated estimate because there is no publication that identifies specific jobs within a specific DOT code—did not explain how he arrived at the job numbers for the associated DOT codes.  (*Id.*).  In other words, according to Plaintiff, an "educated estimate" is not a "general approach" under SSR 24-3p.

The Court is not persuaded that the VE's explanation is fatally deficient so that the ALJ was required to inquire further.   SSR 24-3p instructs ALJs to ask about a VE's general approach to estimating job numbers if the VE "does not provide any explanation."  S.S.R. 24-3p, 2024 WL 5256890, at *5.  The ALJ did just that.  (R. at 78 ("Could you provide a general discussion of how you estimate your job numbers?")).  When read as a whole, the VE's testimony was that he employed an educated estimate based on reliable data sources to arrive at the job numbers for the DOT titles identified.  *Cf. Holt v. Comm'r of Soc. Sec.*, No. 5:25-CV-00813-DAR, 2026 WL

369254, at *10–11(N.D. Ohio Feb. 10, 2026) ("[T]he VE's reliance on data compiled by U.S. Publishing and the use of a unique methodology based on her experience to pair that data with DOT job titles did not make the VE's testimony inherently unreliable."), *report and recommendation adopted*, No. 5:25-CV-00813, 2026 WL 715794 (N.D. Ohio Mar. 13, 2026).  In light of this testimony, it is not so apparent that the ALJ had a duty under SSR 24-3p to ask more about the VE's methodology.

Further, nothing in SSR 24-3p suggests that an educated estimate from an expert is not a "general approach" to estimating job numbers.  In fact, SSR 24-3p consistently highlights that VEs may use their professional knowledge, training, and experience in providing occupational evidence.  S.S.R. 24-3p, 2024 WL 5256890, at *3 (stating VEs may use a combination of reliable sources along with their professional knowledge, training, and experiences), *4 (same).  SSR 24-3p also expressly provides that the SSA does not dictate any specific approach to estimating job numbers.  *Id.* at *4.  And, at base, because VEs are impartial and qualified professionals consulted because of their expertise, a detailed inquiry into the sources of data or approaches used is not usually required.  *Id.* at *4–5.

Even more, SSR 24-3p makes clear that challenges to vocational evidence should be raised at the hearing level.  *Id.* at *4 ("At the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE."), 4 n.10 ("Raising relevant questions about or challenges to the VE's testimony at the time of the hearing, when the VE is ready and available to answer them, furthers the efficient, fair, and orderly conduct of the administrative decision-making process." (citation omitted)).  Yet when provided the opportunity to cross-examine the VE, Plaintiff's counsel declined.  (R. at 79).

Plaintiff's challenge to the VE's testimony for the first time at this late stage implicates the very motivation behind the SSA rescinding and replacing SSR 00-4p.

For these reasons, the Court does not agree that this is an issue that demands remand. Ultimately, a vocational expert's testimony can constitute substantial evidence supporting an ALJ's step five finding. *Wilson*, 378 F.3d at 549. The ALJ did in fact rely on the VE's unchallenged testimony at step five in finding Plaintiff can perform work that exists in significant numbers in the national economy. (R. at 47); *cf. Schmitz v. Colvin*, 124 F.4th 1029, 1333 (7th Cir. 2024) ("But assuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit that testimony."). The Court finds the ALJ's decision is supported by substantial evidence and complies with SSR 24-3p. This error is likewise without merit.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date: April 27, 2026

*s/ Kimberly A. Jolson*
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE